Amrane Cohen, Chapter 13 Trustee
Linda S. Conway, CA State Bar No. 158634
770 The City Drive South, Suite 3300
Orange, CA 92868
Phone (714) 621-0200
Fax   (714) 621-0277

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

|  |  |
|---|---|
| MICHAEL THOMAS CLEMENT<br><br>OTILIA MARIE ELSZY | Chapter 13<br><br>Case No: 8:10-bk-12040-TA<br><br>**TRUSTEE'S BRIEF IN SUPPORT OF OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AND REQUEST FOR DISMISSAL**<br><br>DATE: August 24, 2010<br>TIME: 1:30 p.m.<br>CRTRM: 5B |

Amrane Cohen, Chapter 13 Trustee ("Trustee"), hereby submits his Brief in Support of Objection to Confirmation of Debtor's Proposed Chapter 13 Plan and Request for Dismissal as follows:

**FACTS**

1. Debtor MICHAEL THOMAS CLEMENT and Co-debtor OTILIA MARIE ELSZY ("Debtor") filed a voluntary petition under chapter 13 on 2/19/2010.

2. Debtor's Chapter 13 Plan filed on or about 2/19/2010 ("Plan") provides for monthly payments of $550.00 per month for 60 months with a .75% dividend to unsecured creditors. A copy of the Debtor's Plan is attached as Exhibit "1."

1

3. On June 4, 2010, Debtors' filed their Second Amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Second Amended Form 22C").  A copy of Debtors' Second Amended Form 22C is attached hereto as Exhibit "2."

4. At line 47 of Debtors' Second Amended Form 22C, Debtors deduct $2,658.00 at line 47a. for their trust deed payment to BAC Home Loans Servicing; and $607.38 at line 47b. for real property taxes.

5. At line 57 of Debtors' Second Amended Form 22C, Debtors deduct $80.00 at line 57 a. for Debtor's Business Telephone Line; $33.00 at line 57b. for Debtor's MLS Service Dues (Necessary as a Real Estate Agent); and, at line 57c. (continuation sheet) $110.00 for Debtor's Professional Insurance paid out of pocket; $35.00 for Debtors' Real Estate License Dues paid out of pocket; and, $6.67 for Joint Debtor's Malpractice Insurance paid out of pocket.

6. Debtors have not provided the Trustee with evidence to support their deductions at line 57.  The 2009 Federal tax returns provided to the Trustee show that Debtor spent an average of $60.25 per month for telephone expenses.  The 2009 Federal tax returns do not evidence any expenses for MLS Service, insurance or licenses.  A copy of the 2009 Tax Returns is not attached, but will be provided to the Court at the hearing, if necessary.

7. A copy of this Court's ruling in In re Fleeson, 8:09-19069-TA is attached hereto as Exhibit "3."

///

///

**SUMMARY OF ARGUMENT**

Property taxes are not an allowable deduction on Line 47 of Form 22C, therefore Debtors deduction of $607.22 should be disallowed.

Deductions for "Special Circumstances" have no standard allowances in the Internal Revenue Manual, they must be justified as reasonable and necessary and for which there is no reasonable alternative to be deducted from Form 22C.

**DISCUSSION**

<u>Debtors' Burden of Proof</u>

The burden of proof is on Debtors to show that they have satisfied all requirements for confirmation under 11 U.S.C. §1325. <u>In re Padilla</u>, 213 B.R. 349, 352 (9th Cir. BAP 1997); <u>In re Huerta</u>, 137 B.R. 356, 365 (Bankr. C.D. Cal. 1992) citing <u>In re Wolff</u>, 22 B.R. 510, 512 (9th Cir. BAP 1982) ("It is well established that the burden of proof rests on the party who asserts the affirmative of an issue. A plaintiff has the burden of making out his case in order to warrant relief. Similarly, the proponent of a Chapter 13 plan has the burden of proof as to its confirmation.").

<u>CALCULATION OF PROJECTED DISPOSABLE INCOME</u>

In <u>Hamilton v. Lanning</u>, 130 S.Ct. 2464 (2010), the United States Supreme Court recently adopted the "forward-looking approach" to calculate projected disposable income (rejecting <u>Maney v. Kagenveama (In re Kagenveama)</u>, 541 F.3d 868 (9th Cir. 2008) and embracing <u>Coop v. Frederickson (In re Frederickson)</u>, 545 F.3d 652 (8th Cir. 2008)). The <u>Lanning</u> Court, at 2478, held:   "…when a bankruptcy court calculates a debtor's projected disposable income, the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation."

3

In reaching its holding, the <u>Lanning</u> Court, at 2475, noted with approval: "As the Tenth Circuit recognized in this case, a court taking the forward-looking approach should begin by calculating disposable income, and in most cases, nothing more is required. It is only in unusual cases that a court may go further and take into account other known or virtually certain information about the debtor's future income or expenses." <u>See</u> <u>also</u> the recent Sixth Circuit decision in <u>Darrohn v. Hildebrand (In re Darrohn)</u> --- F.3d. --- (09-5499 7/22/2010) interpreting <u>Lanning</u>. (A copy of the Sixth Circuit's Opinion is attached as Exhibit "6".)

In reaching its decision, the <u>Lanning</u> Court, at 2469-2470, explains:

> BAPCPA left the term "projected disposable income" undefined but specified in some detail how "disposable income" is to be calculated. "Disposable income" is now defined as "current monthly income received by the debtor" less "amounts reasonably necessary to be expended" for the debtor's maintenance and support, for qualifying charitable contributions, and for business expenditures. § 1325(b)(2)(A)(i) and (ii) (2006 ed.). "Current monthly income," in turn, is calculated by averaging the debtor's monthly income during what the parties refer to as the 6-month look-back period, which generally consists of the six full months preceding the filing of the bankruptcy petition. See § 101(10A)(A)(i). The phrase "amounts reasonably necessary to be expended" in § 1325(b)(2) is also newly defined. For a debtor whose income is below the median for his or her State, the phrase includes the full amount needed for "maintenance or support," see § 1325(b)(2)(A)(i), but for a debtor with income that exceeds the state median, only certain specified expenses are included, see §§ 707(b)(2), 1325(b)(3)(A).

Through this discussion, the <u>Lanning</u> Court clarifies the method for calculating projected disposable income and establishes that, as to above-median debtors, the bankruptcy court must apply §§ 101(10A)(A), 1325(b)(2) 1325(b)(3) and 707(b)(2). <u>Lanning</u>, at 2469-2470.

In their Debtors' Revised Brief In Support of Confirmation and Real Property Tax Expense on Form B22C ("Revised Brief"), at page 7, lines 21 through 28, and page 8, lines 1-10, Debtors misinterpret <u>Lanning</u>. At page 7, line 24, Debtors state that the <u>Lanning</u> Court abandoned the mechanical

4

approach "…in favor or a more realistic approach that takes into consideration known or virtually certain expenses at the time of Confirmation when calculating a debtor's future disposable income." Nowhere in the Lanning opinion does the Court state it is adopting a realistic approach. Instead, the Court states that the forward-looking approach is to be used in calculating a debtor's projected disposable income. Further, Debtors ignore the requirement established by Lanning that a Bankruptcy Court may account only for "changes" in the debtor's income or expenses that are "known or virtually certain at the time of confirmation" when calculating a debtor's projected disposable income. Here, the real property taxes are not a "change" justifying adjustment to Debtors' Form B22C.

Debtors further argue, at page 8, lines 1 through 2 that "…the IRM housing standard is inadequate to cover all actual housing expenses in addition to real property taxes." Debtors ignore that §1325(b)(3) and §707(b)(2) specifically prescribe how an above-median debtor's income and expenses are to be calculated, and that the IRM Standards already take into account the real property taxes. See infra.

## DEDUCTION OF PROPERTY TAXES

### Real Property Taxes Do Not Meet the Requirements of Being on Account of Secured Debts and Contractually Due to Secured Creditors

For Debtors to properly deduct the amounts payable for real property taxes to the Orange County Tax Collector at line 47 of their Form 22C, two requirements must be met: the property taxes must (1) be on account of secured debts; and, (2) be contractually due to secured creditors.

///

11 U.S.C. § 707(b)(2)(A)(iii) provides:

>   The debtor's average monthly payments on <u>account of secured debts</u> shall be calculated as the sum of –
>
>   (I) the total of all amounts scheduled as <u>contractually due to secured creditors</u> in each month of the 60 months following the date of the petition; and
>   (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts.... Emphasis added.)

<u>The Property Taxes Are Not Due</u>

The County of Orange's right to *ad valorem* tax attaches as of the lien date of the year to which they relate.  (Cal. Rev. and Tax Code § 2901, <u>In re Grivas</u>, 123 B.R. 876, 886 (Bankr. S.D. Cal. 1991), <u>California Computer Products v. County of Orange</u>, 107 Cal. App. 3d 731, 736, 166 Cal. Rptr. 68, 71  (1980)).  The lien date in California is the first day of January preceeding the fiscal year for which the taxes are levied.  (Cal. Rev. & Tax § 2192).  Thus, for the fiscal year October 2010 to September 2011, the lien for property taxes

///

///

///

attached on January 1, 2010.  The liens for future years will attach per the following table:

| January 1, 2011 | Oct 2011 to Sept 2012 |
|---|---|
| January 1, 2012 | October 2012 to Sept 2013 |
| January 1, 2013 | October 2013 to Sept 2014 |
| January 1, 2014 | October 2014 to Sept 2015 |
| January 1, 2015 | October 2015 to Sept 2016 |

Under the most generous interpretation of on "account of secured debts" only one year of property taxes would be due and those payments have to be divided by 60 to calculate the monthly amount includable in Form 22C.  Any lien for property taxes for years beyond the current year have not attached and the amounts are not due.  Even if the Orange County Tax Collector has a lien for one year of property taxes, such debt is not contractually due.

At page 3 of their Revised Brief, lines 3-9, Debtors incorrectly cite § 707(b)(2)(A)(iii) by failing to include the first line which enumerates the threshold requirement that the average monthly payments must be on account of secured debts.  Also at page 2, lines 11-13, Debtors argue that "…[p]roperty taxes are secured debts that must be paid to maintain a debtor's primary residence…"  and "…like a mortgage payment, they should be deducted in addition to the Local Housing Standard." Debtors offer no evidentiary, statutory or case support for this contention.  Debtors further argue at page 3 of their Revised

7

Brief, lines 13-17, "…Property taxes are statutorily secured debts that must be paid for a debtor to maintain possession of its primary residence. If a debtor fails to pay property taxes in the 60 months post-petition, the county will sell the debtor's principal residence in a tax sale. Thus, property taxes can be taken as a secured debt on Line 47 of the means test." Again, Debtors offer no evidentiary, statutory or case support for this contention.

<u>Property Taxes Are Not "Scheduled As Contractually Due"</u>

The Bankruptcy Court for the Southern District of Ohio considered the meaning of "…all amounts scheduled as contractually due to secured creditors …" in <u>In re Anderson</u>, 383 B.R. 699 (Bankr. S.D. Ohio 2008) and concluded, at page 707:

> "…in referencing "scheduled" secured debt in § 707(b)(2)(A)(iii)(I) the most logical construction of that phrase is to construe it as meaning contractually incurred debt scheduled on "Schedule D-Creditors Holding Secured Claims," which would be debt that is owed by the debtor on the petition date that is secured by collateral. This court construes the term "contractually due" as modifying "secured debt" to differentiate between voluntarily secured debts such as mortgages and security agreements and involuntarily secured debts such as judgment liens and statutory liens.

This view is bolstered by 11 U.S.C. § 101(51) which provides: "The term "security interest" means lien created by an agreement." The property taxes are created by California statute, not by any agreement.

Trustee raised this issue in front on this Court in the Fleeson case (8:09-bk-19069-TA). The tentative decision, which was eventually adopted by the Court, is attached as Exhibit 3.

///

8

<u>The IRM Standards Already Include Allowances For Taxes That Are Taken</u>

<u>By Debtors On Line 25A</u>

The Local Standards already account for taxes for the above-median household in Orange County. The IRM describes the expenses making up the Local Housing Standard as follows:

> Housing and Utilities. Housing expenses include: mortgage (including interest) or rent, <u>property taxes</u>, necessary maintenance and repair, homeowner's or renter's insurance, <u>homeowner dues and condominium fees.</u> The utilities include gas, electricity, water, heating oil, bottled gas, trash and garbage collection, wood and other fuels, septic cleaning, telephone and cell phone. Usually, these expenses are considered necessary only for the primary place of residence. Any other housing expenses should be allowed only if, based on a taxpayer's individual facts and circumstances, disallowance will cause the taxpayer economic hardship. (Emphasis added.)

<u>Case Law On Local Standards: Housing and Transportation</u>

The overwhelming majority of cases in this area concern deductions for transportation expenses rather than housing. The cases addressing the housing expenses specifically are few. <u>In re O'Connor</u>, 2008 WL 4516374 (Bankr. D. Mont. September 30, 2008) holds that debtors are not entitled to deductions for taxes and insurance not included in the mortgage payment.

<u>In re Osei</u>, 389 B.R. 339, 346-52 (Bankr. S.D.N.Y. 2008) allows debtors to take the full amount of the local housing standard even if their actual expenses are lower. This holding which favors debtors whose expenses are lower than the standard will also compel debtors whose expenses are higher than the standard to be limited to the standard.

In their Revised Brief, at page page 2, lines 19-24, Debtors mention this Court's ruling in <u>Fleeson</u>. As do Debtors, the Fleesons'

9

attorney relied on In re Bermann, 399 B.R. 213 (Bankr. E.D. Wis. 2009). However, this Court opined:

> "Unfortunately, there is no record before the court as to whether the property taxes and insurance in this case are part of the monthly amount paid the lender as a product of contractual obligation, or merely as a matter of convenience for the debtors. This would be very material, in the court's view. If there were an explicit, contractual requirement that taxes and insurance be paid through an escrow *to the lender*, the court believes that the language from §707(b)(2)(A)(iii) cited above would control, and the deduction would be allowable at line 47 irrespective of the IRS standard at line 25. However, absent such a contractual provision, the court sees no basis for including the amounts of taxes and insurance at lines 26 or 47 as the automatic alternative." ("Emphasis added.)

Trustee urges the Court to follow its decision in the Fleeson case and deny the deduction of property taxes on line 47 in this case. Debtors have not demonstrated any of the requisite elements that the property taxes are both on account of secured debts and contractually due to secured creditors. Additionally, Debtors have not demonstrated that the real property taxes are made as part of their trust deed payment. To the contrary, on their Amended Form 22C, Debtors have checked the box stating that their trust deed payment does not include taxes or insurance.

### Section 707(b)(2)(A)(iii)(II) Does Not Apply

Beginning at page 3 of their Revised Brief, Debtors argue that the property taxes are necessary to maintain possession of their primary residence. In support of this contention, at page 4 of their Revised Brief, lines 5-7, Debtors cite California Revenue and Taxation Code § 2187 which creates a lien only for tax penalties and interest. Debtors offer no evidentiary, statutory or case support for the balance of their contentions at page 4, lines 8-28, and page 5, lines 1-12, of their Revised Brief and, as such, should these contentions should be disregarded.

Because Debtors have not established the threshold requirements that the property taxes are on account of secured debts and contractually due, § 707(b)(2)(A)(iii)(II) does not apply.  Further, Debtors have not established that the property taxes are:  (1) additional payments; (2) to secured creditors; and, (3) necessary in filing a plan under chapter 13 to maintain possession of their principal residence.

<u>Modification After Confirmation</u>

Beginning at page 8 of their Revised Brief, lines 12-21, Debtors argue that if they are not permitted to deduct the property taxes at line 47, Debtor will be required to modify their Plan after confirmation.  This contention ignores the requirement that the modified plan be proposed in good faith pursuant to § 1329(b)(1) and § 1325(a)(3).  Certainly a modification simply to circumvent the requirements of § 1325(b)(3) and § 707(b)(2) cannot be considered to have been proposed in good faith.

<u>Deductions at Line 57</u>

As special circumstances, at line 57 of Debtors' Second Amended Form 22C, Debtors deduct $80.00 at line 57 a. for Debtor's Business Telephone Line; $33.00 at line 57b. for Debtor's MLS Service Dues (Necessary as a Real Estate Agent); and, at line 57c. (continuation sheet) $110.00 for Debtor's Professional Insurance paid out of pocket; $35.00 for Debtors' Real Estate License Dues paid out of pocket; and, $6.67 for Joint Debtor's Malpractice Insurance paid out of pocket.

Debtors have not provided the Trustee with evidence to support their deductions at line 57 contrary to the instructions on From 22C which state: "You must provide your case trustee with documentation of these expenses and you must provide a detailed explanation of the special circumstances that make such expenses necessary and reasonable."  The 2009 Federal tax returns

11

provided to the Trustee show that Debtor spent an average of $60.25 per month for telephone expenses.  The 2009 Federal tax returns do not evidence any expenses for MLS Service, insurance or licenses.

### CONCLUSION

The Trustee requests that this Court disallow Debtors' deduction at line 47 for real property taxes.  Trustee further requests that this Court disallow Debtors' deductions at line 57 for Debtor's Business Telephone Line, Debtor's MLS Service Dues, Debtor's Professional Insurance, Debtor's Real Estate License Dues and Joint Debtor's Malpractice Insurance.

Based on the foregoing, the Trustee requests that the Debtors' Plan be denied confirmation and the case be dismissed.

Date:  8/18/10                                    __/s/   Linda S. Conway_____
                                                  Linda S. Conway, Staff Attorney for
                                                  Amrane Cohen, Chapter 13 Trustee

**DECLARATION**

I, LINDA S. COWNAY, declare as follows:

1. I am the staff attorney for Amrane Cohen, the Chapter 13 Trustee in this case, and I have personal knowledge of the files and records maintained by the Trustee's office in the regular course of business. I have personally reviewed the files and records kept by the Trustee's office in this case. The following facts are true and correct and within my own personal knowledge.

2. A true and correct copy of the Debtor's Plan is attached as Exhibit "1."

3. A true and correct copy of Debtors' Second Amended Form 22C is attached hereto as Exhibit "2."

4. Debtors have not provided the Trustee with evidence to support their deductions at line 57. The 2009 Federal tax returns provided to the Trustee show that Debtor spent an average of $60.25 per month for telephone expenses. The 2009 Federal tax returns do not evidence any expenses for MLS Service, insurance or licenses. A copy of the 2009 Tax Returns is not attached, but will be provided to the Court at the hearing, if necessary.

5. A true and correct copy of this Court's ruling in <u>In re Fleeson</u>, 8:09-19069-TA is attached hereto as Exhibit "3."

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated:  8/18/10                              /s/   Linda S. Conway

| In re: MICHAEL THOMAS CLEMENT<br>OTILIA MARIE ELSZY<br><br>Debtor(s) | CHAPTER 13<br><br>CASE NUMBER 8:10-bk-12040-TA |
|---|---|

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

770 The City Drive South, Suite 3300, Orange, CA 92868

A true and correct copy of the foregoing document described Trustee's Brief in Support of Objection to Confirmation and Request for Dismissal                             will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

II. **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On   8/18/10                          I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

MICHAEL THOMAS CLEMENT
OTILIA MARIE ELSZY
4712 RHAPSODY DR.
HUNTINGTON BEACH, CA 92649

GARY LEIBOWITZ
LAW OFFICES OF GARY LEIBOWITZ
4050 KATELLA AVE, STE 201
LOS ALAMITOS, CA 90720

☐ Service information continued on attached page

III. **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.
The Hon. Thedor C. Albert

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 8/18/10 | Reyna Patrick | /s/ Reyna Patrick |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009* **F 9013-3.1**